IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| NOLEN EDWIN KIRKPATRICK, #1347676 | § | |
| VS. | § | CIVIL ACTION NO. 6:05cv461 |
| DWAINE DAUGHERTY, ET AL. | § | |

MEMORANDUM OPINION AND
ORDER OF DISMISSAL

Plaintiff Nolen Edwin Kirkpatrick, an inmate confined in the Texas prison system and previously confined in the Wood County Jail, proceeding *pro se* and *in forma pauperis*, filed the above-styled and numbered civil rights lawsuit pursuant to 42 U.S.C. § 1983. The Defendants remaining in the lawsuit are Wood County Sheriff Dwaine Daugherty and Jail Captain Kevin W. Clanton. The cause of action was transferred to the undersigned with the consent of the parties pursuant to 28 U.S.C. § 636(c).

Facts of the Case

The original complaint was filed on December 2, 2005. A bench trial was conducted on August 17, 2006. The Plaintiff called Jailer David Hayes, Jailer Mike Gilmore, former Jailer Jerry Phillips, former inmate Steven Leroy Porter and Jail Captain Kevin Clanton as witnesses. The Defendants called the Plaintiff as a witness. The parties also submitted documentary evidence.

The Court notes that the Plaintiff had the burden to prove his case by the preponderance of the credible testimony and evidence. He did not do so; instead, the Defendants' version of events was just as likely, if not more likely, to be true as the Plaintiff's version of events.

After considering all of the evidence and testimony, the Court makes the following findings of fact based on the preponderance of the credible testimony and evidence. The Plaintiff's claims concern matters that occurred in the Wood County Jail in 2005. He initially complained about sewage backing up in the housing area of the Wood County Jail approximately five times from July 19, 2005, through July 25, 2005. The sewage also backed up on August 19, 2005, and August 21, 2005. The sewage backed up because inmates flushed inappropriate items down the commode, including clothing items, plastic containers, food wrappers, and feminine hygiene products. Plumbers were promptly called every time the sewer backed up. Except for one occasion, the plumbers unclogged the sewer lines with a roto-rooter device within just a few hours after a problem was observed. On the one remaining occasion, the plumbers were unable to go to the jail until two to four hours later, thus the jailers rented a roto-rooter to clean out the line. The plumbing bills for the months of July and August exceeded $3,000 due to inmates backing up the sewer line. Both the jailers and the inmates wanted the sewer lines to be promptly cleaned because the smell permeated the building. Jail officials did not turn on the exhaust system because it merely circulated the air and made the smell worse. Jail officials also installed a sewer basket in the sewer line to trap large items from entering the city sewer system. Plaintiff's Exhibit 1 and Defendants' Exhibit 1 were pictures of the sewer basket and items that had been trapped in it, including paper, wrappers and clothing items. The basket was installed because the Water Department complained about the type of items entering the sewage system from the jail. The basket was cleaned out twice every day.

The tanks where the inmates lived consisted of three levels. People entered the tanks on the middle level, which was a day room. The top and bottom levels were housing areas. There were four cells on each housing level. The sewer lines would back up through drains in the bottom floor.

Only brown water and small particles backed up through the drains. The water drained after the plumbers cleaned out the lines. Wet spots and puddles of water remained on the floor after the water drained. Consequently, inmates were provided mop buckets, mops, squeegees, hot water and disinfectants to clean up the remaining water. They were also provided boots and gloves upon request, although such requests were not normally made by the inmates. Captain Clanton testified that there was never any need to force inmates to clean the housing areas after the water drained because they wanted the housing areas to be clean. He further testified that notices were placed up about possible sanctions if inmates clogged the sewer lines, such as discontinuing optional commissary items.

The Plaintiff did not suffer any harm as a result of the sewer lines backing up. He never sought medical care because he suffered harm as a result of the sewer lines backing up or because inmates cleaned their housing areas.

The Plaintiff also complained about the lack of access to a law library. The jail, however, included three law libraries as part of their regular library. The Wood County Courthouse also included a law library that was occasionally made available to inmates. Captain Clanton testified that the Texas Commission on Jail Standards does not require jails to provide law libraries to an inmate if an attorney has been appointed or retained. The Plaintiff had a court appointed attorney during the times he wanted to use a law library. He wanted to use a law library to research his criminal case. He also wanted to research the possibility of filing a civil suit against a person who had his truck and work equipment. He acknowledged that he has access to a law library in prison and that he decided to forego pursuing the civil suit.

Discussion and Analysis

As an initial matter, the Court notes that civil rights lawsuits are designed to provide relief due to violations of federal law. The Supreme Court has held that many acts that might constitute a violation of state tort law do not amount to constitutional violations. *Baker v. McCollan*, 443 U.S. 137, 146 (1979). *See also Lewis v. Woods*, 848 F.2d 649, 651 (5th Cir. 1988). In this Circuit, before a plaintiff may maintain a civil rights suit, he must show an abuse of governmental power that rises to a constitutional level. *Love v. King*, 784 F.2d 708, 712 (5th Cir. 1986); *Williams v. Kelley*, 624 F.2d 695, 697 (5th Cir. 1980), *cert. denied*, 451 U.S. 1019 (1981).

The Plaintiff's primary complaint concerned the sewage problem. The Eighth Amendment prohibits the imposition of cruel and unusual punishment. The standard of determining whether the conditions are cruel and unusual "must draw its meaning from the evolving standards of decency that mark the progress of a maturing society." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1984). Conditions "alone or in combination" may amount to a constitutional violation. *Id.* at 347. In *Wilson v. Seiter*, 501 U.S. 294 (1991), the Supreme Court held that the Constitution does not mandate comfortable prisons and only deprivations denying "the minimal civilized measure of life's necessities" form the basis of an Eighth Amendment violation. At the same time, in order to prevail on his claim, a prisoner must prove that jail officials acted with a culpable state of mind -- that they acted with deliberate indifference. *Wilson*, 501 U.S. at 302-303; *Alberti v. Sheriff of Harris County, Texas*, 937 F.2d 984, 1004 (5th Cir. 1991).

In the present case, the Plaintiff complained about the sewer lines occasionally backing up due to the misconduct of some inmates. Jail officials, however, promptly took steps to resolve the problem. The sewer lines were cleaned shortly after a problem was observed. Officials also cleaned

out the sewer basket every day. They also provided inmates with supplies to clean the lower housing area where residual water remained after the sewer line was cleaned. The facts of the case do not support a claim of cruel and unusual punishment. The Court specifically holds that the Plaintiff failed to prove that the Defendants acted with deliberate indifference.

The Plaintiff's complaint about the sewage backup must be dismissed for the additional reason that he did not prove that he suffered any type of harm. He must show that he was harmed in order to prevail. *McCord v. Maggio*, 927 F.2d 844, 849 (5th Cir. 1991). *See also Crowder v. Sinyard*, 884 F.2d 804, 812 n.8 (5th Cir. 1989), *cert. denied*, 496 U.S. 924 (1990). Moreover, 42 U.S.C. § 1997e(e) precludes suits by prisoners for mental or emotional damages without a prior showing of a physical injury. The Plaintiff did not prove he was harmed, thus the Defendants are entitled to a judgment in their favor on the sewage backup claim.

In another cruel and unusual punishment claim, the Plaintiff complained in the original complaint about having to use the same razor for an entire week. Furthermore, he had to keep the razor stored in a zip lock bag where bacteria could grow without a disinfectant. He did not raise the issue at trial and thus it was abandoned. Furthermore, the claim is frivolous. *See Gardner v. Thompkins*, 464 F.2d 1031 (5th Cir. 1972).

The Plaintiff's final complaint concerns the denial of access to a law library. The United States Supreme Court has decided that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817, 828 (1977). The right applies to criminal and civil rights matters. *Wolff v. McDonnell*, 418 U.S. 539 (1974). On the other hand, an inmate's right of access

to court is not absolute.  The Supreme Court recently noted some of the limits on the right of access to court:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims.  The tools it requires to be provided are those that inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.  Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis v. Casey*, 518 U.S. 343, 355 (1996).  The right of access to court applies to both convicted prisoners and pretrial detainees who are jailed pending trial.  *See United States v. Moya-Gomez*, 860 F.2d 706, 743 (7th Cir. 1988).  A county satisfies the duty with respect to indigent pretrial detainees by appointing an attorney to represent them.  *Degrate v. Godwin*, 84 F.3d 768, 769 (5th Cir. 1996).  A county must provide an adequate law library only if it fails to provide adequate assistance from someone trained in the law.  *See Green v. Ferrell*, 801 F.2d 765, 772 (5th Cir. 1986); *Morrow v. Harwell*, 768 F.2d 619, 623 (5th Cir. 1985).  In the present case, the Plaintiff was provided an attorney, thus he was not entitled to access to a law library.  To the extent that he wanted to research a general civil case, his claim fails because the right extends to criminal and civil rights matters only.

The Defendants are entitled to a judgment in their favor on the denial of access to court claim for the additional reason that the Plaintiff failed to prove harm.  To prevail on a claim that his right of access to court has been violated, a prisoner must demonstrate prejudice or harm by showing that his ability to pursue a "nonfrivolous," "arguable" legal claim was hindered by the defendant's actions.  *Christopher v. Harbury*, 536 U.S. 403, 415 (2002); *Lewis v. Casey*, 518 U.S. at 351.  In *Lewis v. Casey*, the Supreme Court stated that an inmate must show more than the inability to file a claim in order to succeed on an access to court claim; instead, he must show that he would have been able to bring a nonfrivolous claim with arguable legal merit -- he must show an actual injury.

518 U.S. at 351-53.  The Plaintiff failed to prove that he was harmed by being denied access to a law library.

In conclusion, the Court is of the opinion, and so finds, that the Plaintiff failed to prove that the Defendants subjected him to cruel and unusual punishment or that they denied him access to court.  It is accordingly

**ORDERED** that the complaint is **DISMISSED** with prejudice.  It is further

**ORDERED** that all motions by either party not previously ruled on are hereby **DENIED**.

**So ORDERED and SIGNED this 17th day of August, 2006.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE